# ABBOTTS'

# PRACTICE REPORTS.

## NEW YORK.

### MITCHELL *a.* MOUNT.

*Court of Appeals ; April Term,* 1865.

**SECURITY ON APPEAL FROM SURROGATE'S COURT.—EXECUTION ON JUDGMENT.—ACCOUNTING.**

An order made by a surrogate granting leave to issue an execution against an executor, by 2 Rev. Stat., 116, § 21, cannot be reviewed on appeal unless the appellant gives security for the payment of the full amount directed to be levied, with interest and the costs of appeal.

*It seems,* that even if such security be given, the order cannot be reviewed in respect to the sufficiency of the assets.

The provisions of 2 Rev. Stat., 87, §§ 27, 28,—which prescribe the order of preference and payment of debts of a decedent,—and those of 2 Ib., 116, § 20,—which authorize the surrogate to allow a judgment-creditor to issue execution provided there are assets applicable to his demand,—are to be read and construed together, the former as a direction to executors and administrators as to the performance of their duty, and the latter as a remedy for a creditor in case of neglect ; and the surrogate has power in a proceeding under the latter provisions to allow execution to issue where there are assets, unless it is made to appear that there are debts of the decedent entitled under the former provisions to preference over the demand of the creditor applying. The existence of such debts is not to be presumed.

If he who can and who ought to have explained himself clearly and plainly, has not done it when the occasion required, and opportunity was presented to him, he cannot be allowed to introduce subsequent restrictions which he has not at the proper time expressed.

A judgment not perfected until after the death of the debtor is not entitled to preference of payment under the statute.

The provisions last above referred to, which direct that upon an application for

leave to issue execution the surrogate shall require the executor or adminis-
trator to appear and account,—do not contemplate a settled or liquidated ac-
count, but only require such an accounting of the condition of the assets as
will enable the surrogate to determine whether there is any property applicable
to the debt in question.   (DENIO, Ch. J., dissented.)

Appeal from an order of the Supreme Court, reversing, with
costs, an order of the surrogate of the county of New York,
granting leave to the plaintiffs to issue an execution on a judg-
ment recovered by them against the respondent, an executor.

The decision on the order appealed from is reported, 17 *Ante*,
265.

The executor on appealing to the Supreme Court from the
order allowing the execution to issue, gave a bond, with sure-
ties, in the penalty of only $100, conditioned to prosecute the
appeal with effect, and to pay all costs that might be adjudged
against him in the Supreme Court.

*W. R. Stafford*, for the plaintiffs, appellants.

*C. Tillotson*, for the executor, respondent.

BY THE COURT.—POTTER, J.—This is an appeal from the judg-
ment of the Supreme Court, in the first district, which reversed the
order of the surrogate of the city of New York.   In July, 1863,
the appellants recovered a judgment against the respondent
Mount in the Court of Common Pleas of the city of New York,
for $1,261.76.   Mount was sole acting executor of William B.
Moffat, late of the city of New York, who died in April, 1862.
Letters testamentary were issued to Mount, May 7, 1862.   In
September, 1863, Mitchell, one of the appellants, applied to
the surrogate of New York for a citation, to be issued to Mount
as such executor, to show cause why an execution should not
issue against him as such executor for the collection of such
judgment.   The citation was issued.   Mount appeared and ac-
counted for the amount of the estate, by showing that $11,000
had come to his hands as the avails of the personal estate; that
an amount of personal property amounting to about $27,715.17
was not yet available, by reason of its being under a lease; that
the debts of the testator, unsecured by mortgage or other liens,

including the interest thereon, were about $42,000; that there was a large real estate, worth, over incumbrances, above $150,000, from the sales of a portion of which about $60,000 had been realized. Thereupon, the surrogate made an order granting leave to Mitchell and Cummings to issue execution, in due form of law, against the said Mount as executor, for the amount of said judgment, and interest. Mount appealed from this order to the general term of the Supreme Court, giving an undertaking in the sum of $100 on such appeal. The general term reversed such order of the surrogate, with costs, from which judgment an appeal is brought to this court.

It is so perfectly clear that the general term had no jurisdiction of the appeal in this case, that nothing further is required to be said after reading the provisions of the statute made for such purposes, which are as follows:

"Every such order shall be conclusive evidence, that there are sufficient assets, in the hands of such executor or administrator, to satisfy the amount for which the execution is directed to be levied; and no appeal shall be made from any such order, unless the person making the same shall execute to the plaintiff in such execution a bond with sufficient sureties, to be approved of by the surrogate, conditioned for the payment of the full amount so directed to be levied, with interest thereon, and the costs of defending the appeal, in case the order appealed from shall be affirmed." (2 *Rev Stat.*, 116, vol. 3, 5 ed., 204, § 22 [21].)

The bond in this case was in the penalty of $100, conditioned to pay the costs that may be adjudged against the appellant in the Supreme Court. The amount of the execution directed to be levied was $1,261.76. I am not aware of any repeal or modification of this statute, or of any of its provisions in this respect; none were claimed on the argument, or referred to on the briefs. The provisions of the statute are plain and clear. It is not allowable to interpret what requires no interpretation. Courts possess no power in such cases to give construction to it. The act speaks its own unambiguous, emphatic, unmistakable language, plain to the comprehension of every ordinary mind. This statute is not unconstitutional; its authority is above the power of courts, and is to be obeyed. When a statute is conceived in clear and precise terms, when the sense is manifest

and leads to nothing absurd, there can be no reason to refuse the sense which it naturally presents. To go elsewhere in search of conjectures, in order to restrain or extinguish it, is to endeavor to elude it. ( *Vattel*, B. 2.)

The section of the statute above quoted was enacted with especial reference to just such a case as the one before us. The first division of the section clearly intends to exclude from review by another court the question of discretion given to the surrogate in deciding as to the sufficiency of assets. It declares that his order shall be conclusive upon that point. No appeal therefrom can be brought to correct or reverse such decision. If, for any other reason than that of the sufficiency of assets, the surrogate has committed an error, then the second part or division of the section applies, which declares that no appeal shall be made for any purpose except upon condition of giving a bond in the form and containing the amount of security specified. This last division of the section is not to be construed as authorizing an appeal in relation to the question of discretion upon the question of sufficiency of assets. It must be some other question than that for which an appeal lies. The argument in this case, as well as the opinion of the general term, shows that the only error complained of is, that the surrogate erroneously decided in relation to the sufficiency of assets. This is error. The Supreme Court had no jurisdiction of the appeal upon that question. If we could be wrong in this view, the question of the sufficiency of the bond is fatal to the appeal. The condition upon which only an appeal can be taken has not been complied with. This was decided in Davies *a*. Skidmore (5 *Hill*, 503), per BRONSON, J. But such a statute needs no adjudication to sustain it.

If called upon to look at this case upon the merits, it presents a single question arising upon undisputed facts. Mitchell and Cummings had obtained a judgment against Mount, as such executor, for $1,261.76, after a trial at law upon the merits. This statute, entitled, " Of the Rights and Liabilities of Executors and Administrators," ought to be permitted to speak forth its own decision of the case. It provides (§ 20), " Where a creditor shall have obtained a judgment against any executor or administrator, after a trial at law upon the merits, he may at any time thereafter apply to the surrogate having jurisdic-

tion, for an order against such executor or administrator, to show cause why an execution on such judgment should not be issued."

. "Section 21. The surrogate to whom such application shall be made, shall issue a citation, requiring the executor or administrator complained of, at a certain time and place therein to be named, to appear and account before him; and if, upon such accounting, it shall appear, that there are assets in the hands of such executor or administrator, properly applicable, under the provisions of this chapter, to the payment, in whole or in part, of the judgment so obtained, the surrogate shall make an order, that execution be issued for the amount so applicable."

Exactly what these sections direct was done. The executor rendered his account of the estate. He had been an executor above one year; he had $11,000 in his hands, avails of personal estate; in his account of the estate, and of the performance of his duties, he set up no claim that he had paid a single debt.

There was no claim that there was any debt that was by law entitled to preference, or that there was any amount of debts to be preferred, that would exhaust the $11,000, or any part of it; and although the whole debts of the testator would exceed the moneys in hand arising from the sales already made of personal estate, yet he showed to the surrogate in his account a large amount of real estate, more than sufficient, with the other personal estate not yet made available, to pay all the testator's debts, with the avails of $60,000 of the proceeds of the sales of real estate which had then been realized. The surrogate could see from such an account an abundance of means that could be ordered to be applied to debts, sufficient to pay all the testator's debts. Why, then, if it could be inquired into at all, should not the executor begin to pay? Should the court interfere, even if it had the power, with the exercise of judicial discretion of the surrogate? The Legislature intended to prohibit the interference. If they had not done so, it is for the want of power in the language they have employed. I think the Supreme Court are in error, when they say the surrogate had no authority to direct an execution for the payment of this judgment. The Supreme Court give two reasons as the basis of

their opinion. The first is, that the sections we have quoted would nullify the previous provisions contained in art. 2, 3 Rev. Stat., 5 ed., 174, § 31, which directs every executor and administrator to pay the debts of the deceased, according to a specific class or order. 1. Debts entitled to a preference under the laws of the United States; 2. Taxes assessed upon the estate of the deceased previous to his death; 3. Judgments docketed, and decrees enrolled against the deceased, according to the priority thereof respectively; 4. All recognizances, bonds, sealed instruments, notes, bills, and unliquidated demands and accounts.

There are several answers to be made to this:

1st. The statute cited by the Supreme Court, by force of this same argument, also nullifies that which we have supposed controls this case: Which statute then is nullified? or, being equal, do they nullify each other? If both are not destroyed, which survives? The theory of the Supreme Court, in this regard, cannot be sound. One of these sections is not in conflict with the other, and does not, therefore, nullify the other; nor is such the rule of treating statutes in regard to their construction, even when they appear to be in conflict. The rule, as I understand it, is, that two statutes shall stand together, and both have effect, if possible, for the law does not favor repeal by implication, and it is never allowed, except where inconsistency and repugnancy are plain and unavoidable, and all acts in *pari materia* should be taken together as if they were one law.

There is no apparent inconsistency or conflict in the meaning or in effect between these two statutes. The statute cited by the Supreme Court is intended to be a direction to executors and administrators as to the manner of the performance of their duties, and it prescribes the order of preference to be observed by them in the payment of debts. This is its express object, and the executors and administrators, when they proceed to discharge their duty, are bound to obey this direction. Where debts are all of the same class, all are entitled to an equality in payment, whether it be entire or partial. Where the executor omits or refuses to perform this duty, then the other statute furnishes a remedy, and that is its object. The one prescribes a duty, the other furnishes a remedy in case of neglect. Instead of being in conflict, or the one nullifying the

Mitchell a. Mount.

other, they are in harmony and in aid of each other, and both are thus useful and necessary.

If a debt not in judgment is omitted to be paid, and the executor or administrator refuses to pay it, the creditor can, at any time after six months from the time of the granting of letters, make a like application to the surrogate (section 18 of the same statute, 2 *Rev. Stat.*, 116); a judgment-creditor can apply before the expiration of six months. (*Sec.* 20.) In the debts of the intestate, in the case before us, there was no debt having a preference over others. The appellant's claim, though it was in judgment, had no preference in this respect, because the judgment was not perfected previous to the death of the testator. If it had appeared in the accounts before the surrogate that there were debts entitled to preference, though it did not, and an order had been granted giving a lower order of debts in the rule of preference a priority in payment, this might have been the conflict which the Supreme Court supposed. No such thing, however, appeared. It was for the executor, when he was called upon to pay, and when called upon to account before the surrogate, or to show cause, to have interposed this legal excuse, if it existed, and such legal reason for declining to pay the surrogate would have been bound to regard. No such excuse was made. None is now claimed or pretended by the executor. It is a maxim, that " if he who can, and who ought to have explained himself clearly and plainly, has not done it when the occasion required, and opportunity was presented to him, he cannot be allowed to introduce subsequent restrictions which he has not at the proper time expressed."

It was error in the Supreme Court to assume, and to base their decision on the assumption of the existence of debts having right of preference of payment, not shown and not set up in the respondent's account, and therefore not in the case.

2d. The second error of the Supreme Court upon which they based their opinion is, that there must have been a settlement of the accounts of the executor, before the surrogate could make such an order. The statute requires no such thing, but provides to the contrary, nor is such the practice. (*Dayton's Surr.*, 2 ed., 336, 337.)

The meaning and intent of the word " account," as used in this 21st section of the statute, as explained by the statute it-

self, is such account of the condition of the assets as will enable the surrogate to determine whether there is any property applicable to the debt in question. It cannot be made to mean a settled or liquidated account, or an account then and there to be liquidated. The statutes relieve the executor from accounting and liquidation, until after one year from the time of taking out letters; that is, he cannot advertise for claims to come in until after six months, and the notice of publication must continue six months. Whereas, the account, like that in the present case, under the statute we have been considering, and upon which this case proceeds, is allowed to be demanded at any time after letters are issued. Obviously, therefore, the statute does not contemplate a settlement of accounts. If, on such an accounting as we suppose was intended by this statute, the executor should show that he had not been able to ascertain the amount of debts, or that there were debts which, by the statute, had preference in payment, that there was a doubt about the sufficiency of the assets, or means to pay all the creditors, or any other good reason, the surrogate would doubtless, in the exercise of a discreet judgment, have refused the order. Such a case was not presented to him. The surrogate did exercise his discretion, and if that question was submitted for review, we should say properly exercised it. But we have shown that discretion was not the subject of review; we have shown that the Supreme Court obtained no jurisdiction of the case, and that, if they had, they erred in their judgment on that review.[*]

I think the judgment of the Supreme Court should be reversed, with costs of that court, and of this court, and that of the surrogate be affirmed.

DENIO, Ch.-J., dissenting. I am of opinion that the order of the surrogate was erroneous. An executor or administrator cannot be compelled to render a general account of his administration, nor can he do so at his own instance, until after the expiration of eighteen months from the time of taking out of letters. (3 *Rev. Stat.*, 178, 182, §§ 57, 77.) But, by another provision of the statutes, a creditor, without judgment, may

[*] Compare St. John *a.* Voorhies, *Post*, 53, where the decision of the Supreme Court is qualified and distinguished.

apply to the surrogate for an order for the payment of his debt, or any portion of it, after six months from the time of granting the letters. And, by still another section, a creditor who has obtained a judgment against the executor or administrator, after a trial on the merits, may apply for an order to show cause why an execution should not be issued. The surrogate in such case is to issue a citation requiring the executor, &c., to appear and account before him, and if it shall appear " upon such accounting that there are sufficient assets in the hands of such executor or administrator properly applicable under the provisions of this chapter, to the payment in whole or in part of the judgment so obtained, the surrogate shall make an order that execution be issued for the amount so applicable." (3 *Rev. Stat.*, 204, §§ 18, 20, 21, 22.)

The statute appears to contemplate that an estate may be so circumstanced that a particular debt might be properly paid, or a judgment satisfied, before the arrival of the period for final accounting, and without such final accounting being had, and such cases, doubtless, often occur. Where a creditor has obtained such a judgment, a provisional accounting is to be had, so far as to ascertain that the executor has the means of paying the particular debt, or a part of it, without prejudice to himself or any other creditor. If the affidavit of the respondent could be considered an accounting, it would appear that he had in his hands realized assets to less than thirty per cent. of the debts. If the funds received for real estate sold should be included, the amount would not pay a dividend equal to one half of the debts. But the sale of the real estate having taken place under an order of the Supreme Court, the executor was not obliged to account to the surrogate for these moneys. The judgment was not entitled to any priority in payment over the other debts of the testator, but in case of a deficiency was entitled to a *pro rata* rate.

It is only judgments and decrees rendered against the deceased in his lifetime that have a preference over simple contract-debts. If this judgment, therefore, should be paid in full, the judgment-creditors would obtain an unlawful preference over the other creditors, unless further assets, sufficient to pay all the debts, should afterwards come into the hands of the executor. The amount of the whole inventory, according to the

affidavit, is much less than the aggregate of the debts, and a considerable portion of the property was held under a lease for lives executed by the testator. But I am of opinion that the order was erroneous, because an account was not required or taken. The statutes require that the citation should be for the executor to appear and account. The citation actually issued did not allude to an accounting, but required the executor to show cause why execution should not issue, as though there was a judgment in the Surrogate's Court. As the executor appeared, the citation would be disregarded, if the subsequent proceedings had conformed to the statutes.

Again, there must be an accounting, before an order for execution; and then it can be issued only for the amount of assets applicable to the payment. The affidavit cannot be considered an account. Its purpose was to show that an account at that time was unnecessary.

I do not say that it was sufficient for that purpose, but if the surrogate determined it was not, he should have ordered an account to be presented, which should have been examined by the surrogate, and settled so far as to show that there were assets sufficient to pay the debts.

It is urged by the counsel of the appellant, that an appeal to the Supreme Court was never perfected, because a proper bond was not given by the present respondent when he undertook to appeal to that court. One of the sections already referred to declares that every order made under the preceding section shall be conclusive evidence that there are sufficient assets in the hands of the executor, &c., to satisfy the amount for which the execution is directed to be levied, and that no appeal shall be made from any such order, unless the appellant will execute a bond with sureties to pay the amount directed to be levied, if the order shall be affirmed. (§ 22.) The bond copied in the return in this case is the one required by 3 Rev. Stat., 1, § 26 ; 2 Rev. Stat., 1 ed., 610, § 108, which is applicable to appeals from all orders of a surrogate, except certain ones which are specified.

I am of opinion that as the order appealed from cannot be said to have been made under the provisions authorizing an award of execution upon a citation to account, and upon an accounting had, pursuant to such citation, the bond required in

such cases need not have been given. As the order was wholly unauthorized by the statute, it has not the effect which the statute attributes to such orders, and may be reviewed on giving the security required on appealing from orders, in respect to which the general provision applies. In Davies *a.* Skidmore (5 *Hill*, 501), it was held that the bond like the one given in this case was sufficient where the judgment upon which the surrogate had awarded execution was rendered by default, instead of a trial on the merits. It was thought that under 2 Rev. Stat., 1 ed., 88, § 32, a surrogate might direct execution to issue on any judgment.

I am not clear that this was correct, but am inclined to the opinion that the execution in that section has reference to the more detailed provisions which I have cited from a later title of the chapter. However this may be, the case is an authority to show that the special bond is not acquired, unless the order was made under these provisions, which was not the case as to the order appealed from.

I am for affirming the judgment of the Supreme Court.

Order reversed.

---

## HINDS *a.* DOUGLASS.

*Supreme Court, First District; General Term, February,* 1865.

### SECURITY FOR COSTS.—DISCONTINUANCE.

When a non-resident plaintiff fails to obey an absolute order to file security for costs, the court may grant a judgment of *non pros.*

Though the order for security was obtained on a motion by a part only of the defendants, the complaint may be dismissed as to all, on the plaintiff's failure to comply.

Appeal from order at special term.

Peter S. Woodbury and Earl Douglass, two of the defendants in this action, John Kelly, sheriff, being the third, moved for and obtained an order dated February 12th, 1862, that William